**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**Tallahassee Division**

OCHEESEE CREAMERY, LLC,

      Plaintiff,

vs.                                             Civil Case No. 4:14CV00621-RH-CAS

ADAM H. PUTNAM, in his official
capacity as Florida Commissioner of
Agriculture; and
GARY NEWTON, in his official
capacity as Chief of the Florida
Bureau of Dairy Industry,

      Defendants.

                           /

**DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT AND**
**MEMORANDUM OF LAW**

Defendants, Adam H. Putnam, Commissioner of Agriculture, and Gary Newton, Bureau

Chief of Dairy Industry, Florida Department of Agriculture and Consumer Services ("the

Department"), pursuant to Federal Rule of Civil Procedure 56 and this Court's Orders

regarding summary judgment (Docs. 22, 25), moves for final summary judgment against Plaintiff,

Ocheesee Creamery, LLC ("Ocheesee").

**I.      INTRODUCTION**

Ocheesee brings this action as a free speech case. This action does not however, implicate

any free speech rights. Ocheesee's product is prohibited for sale for human consumption. Any

labeling requirements are purely incidental to the prohibition. Moreover, Ocheesee's products have

in fact been introduced into interstate commerce. Therefore, even if Florida's requirements are

invalidated, Ocheesee would still be bound by the unchallenged federal requirements that Florida

merely incorporates as its own. Either way, there is no subject matter jurisdiction.

This action also fails on the merits.  It is undisputed that Ocheesee's skim milk product lacks the vitamin content of milk.  Indeed, Ocheesee specifically refuses to replace the vitamins lost from skimming.  Consumers expect skim milk to have substantially the same vitamin content as milk and will be deceived and nutritionally harmed by a product labeled "skim milk" that does not meet their expectations.  The long history of the standard of identity for milk has also created a time-tested consensus among consumers that all skim milk has at least the skimmed vitamins replaced.  Preventing these harms is precisely why the federal requirements were created in the first place, in addition to maintaining product consistency.  Florida's requirements are constitutional, both facially and as applied.

### A.    Florida Law

Florida prohibits the sale for human consumption of pasteurized milk and milk products that are not Grade 'A.' § 502.091, Fla. Stat.  The Grade 'A' Pasteurized Milk Ordinance and its appendices ("PMO"), and related federal regulations, have been adopted by Florida and set forth the requirements for pasteurized milk and milk products to be Grade 'A.'  Fla. Stat. § 502.014(5); Fla. Admin. Code Rule 5D-1.001(1).  Grade 'A' means, among other things, that the food meets the standard of identity for that item.

The standard of identity of milk is, in pertinent part, the "lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows."  21 C.F.R. § 131.110(a). "The name of the food is 'milk.'" *Id.* at (e). "Adjust[ment] by separating part of the milkfat therefrom" is permitted by the standard of identity in order to create skim milk.  *Id.* at (a). If the milkfat is separated to make skim milk however, fat soluble vitamins such as vitamins A and D are removed and "shall be added [back] to the food to restore nutrient levels so that the product is

not nutritionally inferior … to the standardized food." 21 C.F.R. § 130.10(b)[1]; *see* 21 C.F.R. § 101.3 (setting the nutrient level "baseline" as "2 percent or more of the Reference Daily Intake (RDI) of any vitamin"); 21 C.F.R. § 101.9(c)(8)(iv) (setting the RDI of vitamin A at 5,000 International Units and the RDI of vitamin D at 400 International Units). "The name of [the] substitute food … is the appropriate expressed nutrient content claim and the applicable standardized term," *e.g.*, "skim milk." 21 C.F.R. § 130.10(e). The PMO succinctly states the requirement to "restore nutrient levels" in skim milk as: "vitamins A and D must be added to dairy products from which fat has been removed … in an amount necessary to replace the amount of these vitamins lost in the removal of fat." PMO at Appx. O, p. 350. Anything less fails to meet the standard of identity for skim milk and is therefore not Grade 'A.' 21 C.F.R. § 130.8(b) (a food fails to meet the standard of identity if it lacks a required ingredient); PMO at § 1, p.6 (definition of milk products).

Such products are imitation milk products. Fla. Stat. § 502.012(10) (definition of "imitation"); 21 C.F.R. § 101.3(e)(1) (same). Florida prohibits the manufacture of imitation milk products "without first obtaining a permit or license from the department." Fla. Stat. § 502.181(1) (prohibition); *see also* Fla. Stat. § 502.165(3) (requiring a permit for intrastate and copy of permit for interstate); Fla. Admin. Code 5D-1.003 (describing permit). Imitation milk products are deemed misbranded and cannot be sold unless the label says that it is "imitation," "immediately thereafter, the name of the food imitated," *e.g.* "skim milk." 21 U.S.C. § 343(c); 21 C.F.R. § 101.3(e). Indeed, conduct in the sale of imitation milk products, such as advertising, packaging, and labeling, that would "cause consumers to think they are purchasing a Grade 'A' milk or milk product" is "untrue, deceptive, or misleading" and prohibited. Fla. Stat. § 502.181(3).

---

[1] The term "skim" is a "nutrient content claim" to which § 130.10 applies. 21 C.F.R. § 101.62(b).

**B.    Undisputed Material Facts**

There are only three sets of material facts and all are undisputed.  First, Ocheesee's product is not Grade 'A' because it lacks the replacement of vitamins A and D in amounts necessary to restore those vitamins to the levels in the milk it once was.   Ex. 1 (test result indicating lack of sufficient vitamins A and D); Conti Depo Tr. 15:5-13 (stop sale order issued after "we had gotten lab work back that showed that the vitamin A and D content were insufficient to meet the identity for milk"), 17:6-8 (confirming that the test results led to the stop sale order).  Indeed, Ocheesee's refusal to replace *anything* is the basis of this action.  (Doc. 1 at ¶ 1) (Ocheesee "refuses to inject its skim milk with any additives").  Second, Ocheesee's products have been found in interstate commerce.  Ex. 2 (Conlin Decl.). Ocheesee may dispute whether it knew, but it cannot dispute that its products were actually in interstate commerce, which is all that matters.  Conlin Decl.; Ex. 3 (Sims Decl.).  Third, the only study of consumer expectations of skim milk, and Ocheesee's product specifically, found that consumers would be harmed by a product labeled skim milk that did not contain replacement levels of vitamins A and D because of the nutritional inferiority and consumer expectation that skim milk to be nutritionally similar to milk.  Ex. 4 (Wright Expert Report).

**C.    Expert Reports**

Each party relies upon an expert.  Dr. Lauri Wright, Ph.D, RDN, was hired by the Department to provide expert opinions about the nutritional value of vitamins A and D in milk and the results of a consumer survey that was designed and conducted by her to discover consumers' opinions and expectations of milk and skim milk, including "what their assumptions were about the product [of Ocheesee] based on the label."  Wright Depo Tr. at 94-96[2]; *see* Wright Report.  Dr.

---

[2] Cited portions of deposition transcripts are attached together as Composite Exhibit 5.

Wright found that in general and as to Ocheesee's product in particular, consumers would be deceived and misled, and nutritionally harmed, if the "skim milk" they bought was not in fact skim milk as defined by the standard.  Wright Report at 11.

Baylen J. Linnekin, a food law attorney, was hired by Ocheesee to provide expert opinions about whether "consumers would tend to be misled by the labels at issue in this case."  Ex. 6 (Linnekin Expert Report) at 6.  Mr. Linnekin has never conducted any consumer research at all however, and merely relied upon affidavits of purchasers[3] and consumers of Ocheesee's products, collected by Ocheesee, to form his opinions.  *See* Linnekin Report; *e.g.* Linnekin Depo Tr. at 20, 23-25, 83.  Mr. Linnekin was specifically asked whether it would "be okay to just rely upon those five affiants" "to do a study on reasonable consumers generally and their perceptions about a particular food label."  Linnekin Depo Tr. at 53.  His answer was "No."  *Id.*  To be fair, Mr. Linnekin also relied upon the historic and dictionary definitions of what skim milk is, in addition to his understanding and the understanding of other food lawyers to conclude what reasonable consumers generally expect.  Linnekin Depo Tr. at 66-69, 82-83; Linnekin Report at 8.  Mr. Linnekin acknowledged that there are no studies of consumer perceptions of skim milk and did not discredit, or attempt to discredit, any of Dr. Wright's opinions.  Linnekin Report at 10; Linnekin Depo Tr. at 67, 70-71.

---

[3] Two of the three affiants purchased Ocheesee's product for their spouse and only consumed it as a last resort or because it was there.  Parker Depo Tr. at 13-14, 16 (wife just used it for cooking; "occasionally, I'd drink it a little bit but it wasn't anything" "probably because I ran out of raw [milk]"); Summerville Depo Tr. at 13 ("I purchased the skim milk for him [my husband]"); 26 ("my husband was the only one who would drink it," "most of it"); 34:9-17.  None of the affiants had knowledge of what was in their affidavits, or their "skim milk."  *Compare* Ex. 7 (affidavits), *with e.g.* Parker Depo Tr. at 10 ("no idea" what vitamins are in milk); Summerville Depo Tr. at 16-17 ("I have no idea" in response to "Does skim milk have less vitamins than whole milk"), 39:4-21; Shaefer Depo Tr. at 23-24 ("I don't know" in response to "what vitamins are in the cream of milk" and not aware of what vitamins are in the other portion).

## II.    ARGUMENT

There is no labeling requirement directly at issue.  Rather, Florida prohibits Ocheesee's product from being sold for human consumption because of what it *is*, not because of what it can be *called*.  Notably, Ocheesee is permitted to sell its product as pet food,[4] something that it is more than willing to do for the raw milk it sells and its consumers readily purchase with the label "not for human consumption," or "pet milk."  *See generally* Florida Statutes Ch. 580; Fla. Admin. Code Rule 5E; Parker Depo Tr. at 14:22-25 (three gallons a week); 40:6-20 (buying raw milk from Ocheesee labeled "not for human consumption"); Shaefer Depo Tr. at 13:10-18, 43:9-16 (buying raw milk from Ocheesee labeled "pet milk").  As far as the specific challenge at issue however, Ocheesee's product is illegal and this Court should not engage in a constitutional analysis of labeling requirements that do not apply. Nevertheless, Ocheesee's products have been introduced into interstate commerce.  Invalidating Florida's requirements will therefore accord Ocheesee no relief and this action must be dismissed for lack of subject matter jurisdiction.  Florida merely adopted the federal standards that apply to Ocheesee products in interstate commerce. Alternatively, Florida's requirements and enforcement are constitutional under the First Amendment.

---

[4] Ocheesee is also permitted to feed it to Ocheesee's own pigs, which is what the Department originally understood Ocheesee to be doing with its skim. Conti Depo Tr. at 15:18-23, 37:14-20. Indeed, "skimmed milk" like Ocheesee's has, for hundreds of years, been used as pig slop. *See* ADAM SMITH, AN INQUIRY IN THE NATURE AND CAUSES OF THE WEALTH OF NATIONS, 203-04 (Edwin Cannan ed., London: Methuen & Co., Ltd. 5th ed. 1904)(1776); Linnekin Expert Report at n.6 (citing same proposition); Linnekin Depo Tr. at 34:3-11.  It was treated as a byproduct of butter and cream production and inferior in character until vitamin A replacement began to make skim milk what we now expect it to be. *See* Ex. 8 (THE DAIRY PRACTICES COUNCIL, GUIDELINE FOR VITAMIN A & D FORTIFICATION OF FLUID MILK 2 (July 2001) ("As skim and lower fat milks became popular, the reduction of vitamin A levels with fat reduction became an issue since whole milk was considered a good source of vitamin A. This was addressed in the 1978 PMO under the standards of identity for lowfat and nonfat milks")).

## A.    Not Speech

"Any First Amendment interest … is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity." *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations,* 413 U.S. 376, 389, 93 S. Ct. 2553, 2561 (1973).  "[I]it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language . . .." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 69 S. Ct. 684, 691 (1949); *see also Ford Motor Co. v. Texas Dept. of Trans.*, 264 F. 3d 493 (5th Cir. 2001)[5] (upholding any speech restrictions as incidental to the same law's prohibition on Ford retailing motor vehicles – even though Ford's advertisement was "of truthful facts").

A milk product that lacks replacement of the lost, measurable amounts of vitamin A and D, fails to meet the standard of identity of milk, as modified for a "skim" nutrient content claim, and is thus not Grade 'A' and therefore *prohibited for sale* for human consumption in Florida.  What the illegal product can or cannot be called is incidental and unprotected, even if truthful.  It therefore matters not what the labeling requirements are for products that *do* meet the standard of identity for skim milk.  Nor does it matter what the labeling requirements are for Non-Grade 'A' products under the imitation milk provisions relevant to Ocheesee's forced speech claim.  Indeed, Ocheesee need not say *anything* on the label for the prohibition of its product to apply, because either it is not Grade 'A,' or Ocheesee does not have an imitation milk permit.

The Supreme Court long ago addressed the validity under the due process clause of the Fourteenth Amendment of a similar Ohio law that prohibited the sale of condensed skimmed milk

---

[5] The Sixth Circuit evaluated the issue under *Central Hudson*'s first prong, rather than disposing of the claim outright as not involving any First Amendment interest at all, as the Supreme Court has done when the statute prohibits conduct.  *See e.g. Giboney*, 336 U.S. 490.  Either way, Ocheesee's action fails.

unless it was labeled as such. *Hebe Co. v. Shaw*, 248 U.S. 297, 39 S. Ct. 125 (1919). Over a three Justice dissent that saw the issue as labeling, the Court found that the "statute could not direct itself to the product as distinguished from the name more clearly than it does. You are not to make a certain article, whatever you call it except from certain materials." *Id.* at 302. The Court further found the "object plainly being to secure the presence of the nutritious elements mentioned in the act, and to save the public from the fraudulent substitution of an inferior product that would be hard to detect," even if the product "should be admitted to be wholesome." *Id.* at 302-303; *Hutchinson Ice Cream Co. v. Iowa*, 242 U.S. 153, 159, 37 S. Ct. 28, 30 (1916) (upholding statute "to us merely to prohibit the sale of such compounds [containing less than standard amount of butterfat] as ice cream"). For decades, the courts "have held consistently that the label of a food is not the controlling factor in determining whether under the 1938 Act [the Food, Drug & Cosmetic Act of 1938, 21 U.S.C. § 301, *et. seq.*] an article 'purports' to be a standardized food" and therefore subject to condemnation. *U.S. v. 30 Cases, More or Less, Leader Brand Strawberry Fruit Spread*, 93 F. Supp. 764, 771 (S.D. Iowa 1950) (collecting Supreme Court cases).

The Court has "repeatedly sustained the validity of similar provisions" under police power. *Hutchinson Ice Cream*, 242 U.S. at 159; *see also Anderson v. City of Tampa*, 164 So. 546, 678 (Fla. 1935), *on rehearing* (noting that it is "well settled" that ordinance or statute may "prohibit the sale of milk below a certain standard" because of deception and nutrition, in holding it is within police power to set butterfat content for chocolate milk). Any speech restrictions under Florida law are likewise incidental (and constitutional under police power) and therefore not protected under the First Amendment.

8

### B.      <u>Interstate Commerce</u>

This action should be dismissed for lack of subject matter jurisdiction due to lack of redressability and dismissed for failure to join an indispensible party.  Article III of the United States Constitution limits the judicial authority of federal courts to "cases" and "controversies." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F. 3d 1296, 1302 (11th Cir. 2011). To fulfill this case-or-controversy requirement, a plaintiff must have "standing." *See Florida Right to Life, Inc. v. Lamar*, 273 F. 3d 1318 (11th Cir. 2001). The Supreme Court has held that the "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). One of these is that the injury alleged must be "likely to be redressed by a favorable decision." *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976).  Rule 19(a)(1) of the Federal Rules of Civil Procedure defines a "required party" as a person in whose absence "the court cannot accord complete relief among existing parties" or who claims an "interest relating to the subject of the action…so situated that disposing of the action in the person's absence may…leave an existing party subject to a substantial risk of incurring …inconsistent obligations because of the interest."

The "introduction or delivery for introduction into interstate commerce" of a misbranded food, or the "receipt [of it] in interstate commerce … and delivery or proffered delivery thereof for pay or otherwise," subjects the product to the jurisdiction of the Food and Drug Administration ("FDA") and the Food, Drug & Cosmetics Act.  21 U.S.C. § 331.  Ocheesee's products have in fact been found in interstate commerce and therefore, even if the state statutes and rules are invalidated, the federal statutes, regulations, and PMO they incorporate will remain and impose the same requirements.  Ocheesee therefore lacks standing because the Court cannot redress its claims. Moreover, because the FDA (which has authority with respect to the federal laws) has not been

joined, dismissal of Ocheesee's declaratory judgment claim is required for the additional reason of failure to join an indispensible party.

C.    **First Amendment Analysis**

Even if the First Amendment applies, Florida's labeling requirements and enforcement are constitutional.  Commercial speech is afforded lesser protection under the First Amendment than other forms of expression because of its "greater objectivity" and "hardiness."  *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, n. 24 (1976) (explaining attributes).  These attributes "make it less necessary to tolerate inaccurate statements for fear of silencing the speaker," "make it appropriate to require" a particular "form, or include such additional information, warnings, and disclaimers, as are necessary to prevent its being deceptive," and "make inapplicable the prohibition against prior restraints."  *Id.*  "The entire commercial speech doctrine, after all, represents an accommodation between the right to speak and hear expression *about* goods and services and the right of government to regulate the sales *of* such goods and services." L. Tribe, American Constitutional Law § 12–15, p. 903 (2d ed.1988).

Ocheesee's conduct is illegal, and its speech is untruthful and inherently misleading and may therefore be prohibited because it is not protected by the First Amendment. Even if Ocheesee's speech were protected, Florida's labeling requirements are still constitutional. Florida has substantial interests in preventing confusion or deception, providing consistency, and preventing harm regarding nutrient levels in milk, a product traditionally relied upon to meet nutritional needs. Florida's labeling requirements directly advance those interests in a proportional fit sufficient to satisfy constitutional requirements.  To the extent Ocheesee challenges compelled speech, that speech was part of a negotiation concerning a permit application that is no longer pending.  Nevertheless, the requirements are reasonably related to Florida's interests and are not

10

unjustified or unduly burdensome. Alternatively, any compelled speech directly advances Florida's interests in a proportional fit sufficient to satisfy constitutional requirements.

### 1. "Skim Milk"

In the first count of Ocheesee's complaint, Ocheesee challenges, facially and as applied, "the labeling requirements and enforcement" prohibiting Ocheesee from describing its "skim milk as 'skim milk' unless additives are injected." (Doc. 1 ¶¶ 80, 91). Prohibitions on commercial speech are evaluated under 4-part *Central Hudson* analysis. *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York*, 447 U.S. 557 (1980). Pursuant to the *Central Hudson* analysis, a court first determines whether the speech concerns unlawful activity or is misleading. *Central Hudson*, at 566. If a court finds in the affirmative on either prong, the speech is not entitled to First Amendment protection, and the analysis ends. *Id.* "If the communication is neither misleading nor related to unlawful activity," then the state must: A) assert a substantial interest; B) the regulation must directly advance the government interest; and C) the regulation must not be more extensive than necessary. *Id.*, at 564.

### a. Ocheesee's product is illegal and labeling its product "skim milk" is not truthful and is inherently misleading.

As already explained, the sale of Ocheesee's product is illegal and the state may prohibit commercial speech related to illegal conduct. *Pittsburgh Press,* 413 U.S. at 389. Here too, it does not matter that Ocheesee's product might, under some dictionary definition, truthfully be called "skim milk." All that matters is that its product is illegal. Ocheesee cannot "bootstrap" itself "into the heightened scrutiny of the First Amendment simply by infusing the prohibited conduct with some element of speech." *Ford*, 264 F. 3d at 506. This "erroneous path" has been rejected by the Supreme Court and should be rejected by this Court. *Id.* at 50-07, citing *Giboney*, 336 U.S. 490.

"Skim milk" is not, however, a truthful description of Ocheesee's product. "Untruthful

11

speech, commercial or otherwise, has never been protected for its own sake." *Virginia Bd. of Pharmacy*, 425 U.S. at 771. Ocheesee's product is materially different from other "skim milk" because it is less than "skim milk." Labeling Ocheesee's product "skim milk" implies that it is fundamentally the same as other "skim milk" – but it is concededly not the same. "Skim milk" may be different in many ways: "organic," "all-natural,[6]" "vitamins A and D added," *i.e.*, fortified; but those differences are indicated on the label and merely distinguish the "skim milk" products further. 7 C.F.R. § 205.102 (any product sold as "organic" must meet USDA requirements); 21 C.F.R. § 101.54(e) (permitting label to say vitamins A and D "added" only if added to meet optional fortification level of 10% RDI, and not required replacement level of 2% RDI in *id.* § 101.3(e)(4)). Those distinctions do not change, however, what plain, "skim milk" is. Fundamentally, at its most basic, all "skim milk" that a consumer is exposed to (legally) has at least had lost vitamins replaced. That is what "skim milk" is and what Ocheesee's product is not.

Speech may be prohibited entirely if is "inherently likely to deceive" or "where the record indicates" that it "has in fact been deceptive." *International Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 636 (6th Cir. 2010) (quoting *In re R.M.J.*, 455 U.S. 191, 202–03, 102 S. Ct. 929, 937 (1982)); *id.* at 638 (claims that certain milk is "antibiotic free" and "pesticide free" would be inherently misleading "because they falsely imply that conventional milk contains antibiotics and pesticides when in fact the State tests to ensure that it does not" and remanding to evaluate State's testing capability). Labeling Ocheesee's product as "skim milk" is also inherently misleading because that label expressly equates the product with something it is not, both in substance and

---

[6] The "FDA has not developed a definition for use of the term natural or its derivatives. However, the agency has not objected to the use of the term if the food does not contain added color, artificial flavors, or synthetic substances." What is the meaning of 'natural' on the label of food?, FDA Basics, *available at*: http://www.fda.gov/aboutfda/transparency/basics/ucm214868.htm (last accessed June 4, 2015). It seems Ocheesee is not prohibited from continuing to label its product "all-natural," even with replacement vitamins, as many brands in the grocery store do.

expectation, as explained above. Nor would the consumer have any way to evaluate the nutritional differences by comparing nutritional labels, if they even looked. *See* Wright Depo Tr. at 65:10-11, 83:23--84:2 (explaining that consumers do not typically read labels other than the principle display panel on the front); Linnekin Depo. Tr. at 65:5-9 (same); *Hebe Co.*, 248 U.S. at 303 (noting "consumer in many cases never sees [the label]"). Ocheesee is exempt from the requirement of a nutrition label, which lists the RDI of the product's vitamin content, because it is a small business. 21 U.S.C. § 343(q)(5)(D); 21 C.F.R. § 101.9(j)(1); Newton Depo Tr. at 35:1-8 (explaining that the Department helped "accommodate them [Ocheesee] in getting that [exemption]"). Nor did Ocheesee's product have such a label. Depo. Tr. Schaefer, Ex. 2. Moreover, Ocheesee's bottle has "in fact" been deceptive. Wright Report at 11. "By and large, consumers found that the packaging of Ocheesee Creamery appeared 'wholesome' and 'pure' and expected that the product would have the same vitamin content as other milk products." *Id.*

### b. Florida's interests are substantial.

Florida's interests are substantial. Even before there were standards of identity for milk and milk products, the "purposes to secure a certain minimum of nutritive elements and to prevent fraud" in the substitution of an inferior product because of its likeness to milk, a food superior in nutrition, had long been recognized and sufficient to warrant a complete prohibition of the inferior product. *E.g. Hebe Co.*, 248 U.S. at 303; *Carolene Products Co.*, 304 U.S. 144, 58 S. Ct. 778 (1938); *Hutchinson Ice Cream Co.*, 242 U.S. 153; *see also Anderson v. City of Tampa*, 164 So. 546 (Fla. 1935) (recognizing that the regulated product could be banned outright); *Logan v. Alfieri*, 148 So. 872, 440 (Fla. 1933) (noting that it is "well recognized" "that milk is a valuable and universal food product" "peculiarly liable and subject to … adulteration" and "may seriously affect the public health" if produced or distributed improperly and that even "strict and burdensome"

13

regulations are needed "to guarantee to the consumer that protection which the sovereignty owes to him"). The President urged passage of the Food, Drug & Cosmetic Act of 1938, 21 U.S.C. § 301, *et. seq.*, "and particularly of the standard of identity provision," because the "multiplication of goods" had prevented consumers "from choosing intelligently" and producers from "any attempt to maintain higher standards." *Federal Security Administration v. Quaker Oats Co.*, 318 U.S. 218, 230-31 & n.7, 63 S. Ct. 589, 596 (1943) (citing legislative history). The FDA Chairman additionally testified that standards of identity would reflect consumers' expectations and was "one of the most important provisions of the Act." *Id.*

        **c.** **The regulation directly advances Florida's interests and is not more extensive than necessary.**

Florida's incidental requirement that only milk products meeting the standard of identity for skim milk be called "skim milk" directly advances Florida's interests and is not more extensive than necessary. Standards of identity were authorized to prevent the real harms found by Congress of degrading integrity of food products and consumers buying an article which was different from what it purported to be. *Federal Security Administration v. Quaker Oats Co.*, 318 U.S. 218, 63 S. Ct. 589 (1943) (explaining legislative history). The adoption of a standard of identity is the recognition that "consumer confusion would ensue" "in the absence" of that standard. *Id.* at 228-29; 230-31 ("The provisions for standards of identity thus reflect a recognition by Congress of the inability of consumers in some cases to determine, solely on the basis of informative labeling, the relative merits of a variety of products superficially resembling each other"). Even in the 1950s, it was "a matter of common knowledge that sin[c]e the enactment of the Food, Drug & Cosmetic Act of 1938, 21 U.S.C.A. § 301 *et seq.*, consumers of food products have come more and more to rely upon the uniform quality of standardized commodities, generally the effect of which is to make all less wary and more credulous." *U.S. v. 30 Cases, More or Less, Leader Brand Strawberry Fruit*

14

*Spread*, 93 F. Supp. 764, 767-78 (S.D. Iowa 1950) (explaining legislative history, which was already difficult to obtain, and case law regarding standards of identity and misbranding).

Nothing has diminished the harms identified by Congress or the purposes of standards of identity. Now, consumers expect not just that they get what they think the product purports to be, but that they get what the standard of identity says the product is, because that standard is what they have come to know the product as. Indeed, a recent survey of consumers (and only one like it), found that most buy milk for its nutritional value and overwhelmingly expect that products labeled skim milk contain the same vitamin content. Wright Expert Report at 6-7. This expectation is so strong that consumers reported nothing but negative feelings if skim milk lacked the vitamins required by law and would refuse to purchase a product missing vitamins. *Id.* at 8-9 (using words like "feeling violated," "lied to," "deceived," and "angry"). Even at the end of the survey when suspicion was at its peak, the majority of consumers still found Ocheesee's product to appear to have the same vitamin content as other brands of skim milk. *Id.* at 10; Wright Depo Tr. 63-64 (explaining that the results "would have been higher" if the question had been placed earlier in the survey); Wright Expert Report at 10 (24% were "unsure," indicating that suspicion due to placement lowered the result). Consumers cannot shake their expectation that products passed off as skim milk are nutritionally the same as milk.

Vitamins A and D are still "essential in human nutrition." 21 C.F.R. § 101.9(c)(8)(iv); Wright Expert Report at 3-6. Vitamin A is "critical for vision" and "essential for normal reproduction, bone development and immune function" among other recognized functions. *Id.* at 3. Vitamin D is well known for its role in calcium absorption and bone health. *Id.* 5. Milk is "rich" in vitamin A, and although vitamin D is not as abundant in milk, "only half" of milk's "excellent source of calcium" would be absorbed without it. *Id.* at 3-4, 6. Strikingly, "[i]f people

15

rely on [Ocheesee's] product for daily nutritional needs," the purpose for which 81% of consumers rely upon milk, then "they are experiencing a 10% loss of vitamin A and 25% loss of vitamin D in only one serving of milk" and their "absorption of calcium, plentiful in milk, will be significantly decreased." Wright Expert Report at 11.

### 2. "Non-Grade 'A' Milk Product, Natural Vitamins Removed"

In the second and final count, Ocheesee challenges, facially and as applied, the "compelled label requirement and enforcement" "ordering" Ocheesee to label its product as "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed." (Doc. 1 ¶¶ 97-98). There is no such requirement. Ocheesee's product is "imitation" skim milk and Ocheesee is prohibited from manufacturing it without a permit. But, Ocheesee does not challenge the imitation milk provisions (or any particular provisions). Ocheesee refused to call its product "imitation" and its challenge arises out of the Department's effort to accommodate that refusal while finding a way for Ocheesee to sell its illegal product. Conti Depo Exs. 2-3, 7; Conti Depo Tr. at 58:11 ("she did not want to use the term 'imitation'"), 25-27 (brainstorming about how to allow Ocheesee to sell its inferior product), 34-36 (negotiations in "uncharted territory" because "no one has asked us before to sell substandard milk"), 53-60; Newton Depo Tr. at 31:12--32:5 ("we were trying to come up with options to accommodate them"). Labeling Ocheesee's product as "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed," was the last negotiated offer by the Department. Conti Depo Tr. at 34-37 (explaining that the Department thought it was "coming to an agreeable conclusion at that point"). Ocheesee never responded and its permit application laid dormant until it was recently denied. Ex. 9 (denial letter); Conti Depo Tr. at 54:1-11. The offer of "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" is off the table and Ocheesee's challenge to it is now moot.

16

Only incidentally, as an alternative to its outright prohibition, was Ocheesee's product to be called "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed," which is moot, or now "imitation skim milk" if it is to be sold.  21 U.S.C. § 343(c).  Either way, there is no First Amendment interest. *E.g. Pittsburgh Press,* 413 U.S. at 389.  Ocheesee's challenge also fails on the merits.  Compelled commercial speech, or disclosures, need only be "reasonably related to the State's interest in preventing deception of consumers." *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 650 (1985); *Milavetz, Gallop & Milavetz, P.A. v. United States,* 559 U.S. 229, 250, 130 S. Ct. 1324 (2010) (upholding disclosure requirement as "reasonably related to the State's interest in preventing deception").  Both "imitation skim milk" and "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" are reasonably related to Florida's interests.

The Eleventh Circuit's use of *Zauderer* as the standard for disclosures however, has not been consistent.  In one case, the Eleventh Circuit has applied the *Central Hudson* analysis to disclosures without any explanation why *Zauderer* was not the standard or otherwise inappropriate.  *Mason v. Florida Bar*, 208 F. 3d 952 (11th Cir. 2000).  In another case, the Eleventh Circuit applied *Zauderer*, but only to show that disclosure is inherently the least restrictive means available to avoid deception.  *Borgner v. Brooks*, 284 F. 3d 1204 1214-16 (11th Cir. 2002).  To the extent the Eleventh Circuit has evaluated *Zauderer* at all, it has applied it too narrowly and missed the point.

*Zauderer* rejected the *Central Hudson* analysis as unnecessary because of the "material differences between disclosure requirements and outright prohibitions on speech." *Zauderer*, 471 U.S. at 650; *American Meat Institute v. U.S. Dep't of Agriculture*, 760 F. 3d 18, 22 (D.C. Cir. 2014).  "[D]isclosure requirements trench much more narrowly on an advertiser's interests than do

flat prohibitions on speech," and "warnings or disclaimers might be appropriately required in order to dissipate the possibility of consumer confusion or deception." *Id.* at 651 (quotations omitted) (citing and explaining cases). Additionally, speakers' interest against disclaimers, an interest in *not* providing information, is "minimal" because First Amendment protection of commercial speech is largely justified by its informational value to consumers. *Zauderer*, 471 U.S. at 651. The Eleventh Circuit recognized this difference, but failed to apply *Zauderer* as the independent standard it is.

The Second, Sixth, Eighth, Tenth, and D.C. Circuits use *Zauderer* as the standard to evaluate disclosures and not *Central Hudson*. *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F. 3d 104, 115 (2nd Cir. 2001); *Boggs*, 622 F.3d at 641-42; *1-800-411-Pain Referral Service, LLC v. Otto*, 74 F. 3d 1045, 1061-62 (8th Cir. 2014) (applying only because the ads were inherently misleading); *U.S. v. Wenger*, 427 F. 3d 840, 849 (10th Cir. 2005) (characterizing *Zauderer* as "eas[ing] the burden of meeting the *Central Hudson* test" because *Zauderer* permits the court to "presume" the factors); *American Meat*, 760 F. 3d at 21. And at least in the context of political speech, which enjoys greater First Amendment protection, the Eleventh Circuit has distinguished between prohibitions and disclosures, and rejected narrow tailoring for a more relaxed standard for the latter. In *Worley v. Fla. Sec. of State*, 717 F. 3d 1238 (11th Cir. 2013), the Eleventh Circuit upheld Florida's disclosure and disclaimer scheme for political speech under lesser scrutiny because they "may burden the ability to speak, but they impose no ceiling on campaign-related activities, and do not prevent anyone from speaking" and facilitate an informational interest much like that in *Zauderer*. *Worley*, 717 F. 3d 1242-45 (relying on and quoting *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 130 S. Ct. 876 (2010)).

Nevertheless, even if the *Central Hudson* analysis applied to disclosures, rather than the

18

*Zauderer* standard, then both "imitation skim milk" and "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" would pass.  The same analysis applied in II(C)(1), *supra*, applies equally here and the forced speech passes all four parts of the *Central Hudson* analysis. Particularly, because disclosure "trench[es] much more narrowly" and a speaker's interests are "minimal," the forced speech passes parts III and IV of the *Central Hudson* analysis.  This is consistent with the Eleventh Circuit's application of *Zauderer.* The forced speech might even *be* the direct advancement and tailoring required under those parts.  *See e.g.*, *Peel v. Attorney Registration & Disciplinary Comm'n of Ill.,* 496 U.S. 91, 110, 110 S. Ct. 2281 (1990) (positing that "a State might consider ... requiring a disclaimer" to cure potentially misleading statements); *Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation,* 512 U.S. 136, 146–47, 114 S. Ct. 2084 (1994) (noting that a different disclaimer "might serve as an appropriately tailored check against deception or confusion"); *Glickman v. Wileman Bros. & Elliott, Inc.,* 521 U.S. 457, 490–91, 117 S. Ct. 2130 (1997) (Souter, J., dissenting) (recognizing "a longstanding preference for disclosure requirements over outright bans, as more narrowly tailored cures").  Indeed, the Supreme Court in *Zauderer* recognized that "all our discussions of restraints on commercial speech have recommended disclosure requirements as one of the acceptable less restrictive alternatives." *Zauderer*, 471 U.S. at n.14.

Both "imitation skim milk" and "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" appropriately explain what Ocheesee's product is in a way that distinguishes it from skim milk to avoid the particular deception involved in using that term.  Ocheesee's product is not skim milk because it lacks replacement of the vitamins lost from skimming and is therefore not Grade 'A.'  It *imitates* skim milk. In particular, Ocheesee's product is accurately "Non-Grade 'A'" because it is not Grade 'A.'  It is accurately a "Milk Product" because it is a product of milk, made

19

by processing milk into something different.  *See also* § 502.012(13), Fla. Stat. (definition of "milk product"); PMO at s. 1, X, at p.6 (definition of "milk products"); Depo. Tr. Schaefer Ex. 2 (Ocheesee's own label used the term "milk product" for its product).  Finally, "Natural Milk Vitamins Removed" is accurate because the milk vitamins naturally in milk are removed by skimming the cream.  Ocheesee's complaint is unpersuasive that the statement is not perfect because not *all* vitamins are removed – water soluble vitamins, like niacin or vitamin B6[7], remain.  To the extent a reasonable consumer expects vitamins in her milk, however, she likely does not expect those vitamins.[8]  The consumer expects the vitamins contained in the cream that is skimmed off of Ocheesee's product – vitamins A and D.  *See* Wright Expert Report.  Moreover, "Natural Milk Vitamins Removed" is precise because the removal of those vitamins is exactly why Ocheesee's product is a "Milk Product" and not Grade 'A.'

This not only makes the disclosures tailored to directly advance Florida's interests under *Central Hudson*, but also reasonably related to the prevention of deception under *Zauderer*.  Indeed, "the means-end fit is self-evidently satisfied when the government acts only through a reasonably crafted mandate to disclose 'purely factual and uncontroversial information' about attributes of the product or service being offered."  *American Meat Institute v. U.S. Dep't of Agriculture*, 760 F. 3d 18, 26 (D.C. Cir. 2014) (comparing the self-evident tendency to doctrine of *res ipsa loquitur* and upholding country-of-origin disclaimer on meat).  Neither "imitation skim milk" nor "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" is so one-sided or incomplete that they would not qualify as factual and uncontroversial. *See id.* at 27; *c.f. Nat.'l Ass'n*

---

[7] USDA, Agricultural Research Service, National Nutrient Database for Standard Reference Release 27, Basic Report: 01211, Milk, whole, 3.25% milkfat, without added vitamin A and vitamin D, *available at*: http://ndb.nal.usda.gov/ndb/foods/show/180?manu=&fgcd= (last accessed June 5, 2015).

[8] Indeed, milk is not a major source of most of the water soluble vitamins it contains.  *Compare id.* with 21 C.F.R. § 101.9(c)(8)(iv) (setting RDIs for essential vitamins in context of food labeling).

*of Mfrs. v. S.E.C.*, 748 F. 3d 359 (D.C. Cir. 2014), *overruled on other grounds by American Meat* ("conflict free" "conveys moral responsibility for the Congo war" and its absence conveys "blood on its hands").

## III.   CONCLUSION

There is no subject matter jurisdiction. Ocheesee's product is prohibited for sale for human consumption and any labeling requirements are purely incidental to that prohibition. Moreover, even if Florida's requirements are invalidated, Ocheesee would still be bound by the unchallenged federal requirements because its products have been found in interstate commerce.

This action also fails on the merits because consumers will be deceived and nutritionally harmed by Ocheesee's product. Ocheesee's product is not what they expect "skim milk" to be, most likely *because of* skim milk's standard of identity. Indeed, the purpose of standards of identity was to protect and shape consumers' expectations and maintain product consistency. Florida's requirements are constitutional, both facially and as applied.

WHEREFORE, the Department respectfully requests that the Court grant its motion for summary judgment against Ocheesee.

PAMELA JO BONDI
ATTORNEY GENERAL

_/s/ Ashley E. Davis_____
Jon A. Glogau
Chief, Complex Litigation
Fla. Bar No. 371823
Ashley E. Davis
Assistant Attorney General
Fla. Bar. No. 48032
David S. Grossman
Assistant Attorney General
Fla. Bar No. 100735
Complex Litigation
Office of the Attorney General
PL-01, The Capitol

21

Tallahassee, FL 32399-1050
(850) 414-3300
(850) 414-9650 (Fax)
Jon.Glogau@myfloridalegal.com
Ashley.Davis@myfloridalegal.com
David.Grossman@myfloridalegal.com
Teresa.Herndon@myfloridalegal.com
Chanda.Johnson@myfloridalegal.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above document was served upon jpearson@ij.org on

this 22nd day of June, 2015.

*/s/ Ashley E. Davis*
Attorney