# EXPERT REPORT OF BAYLEN J. LINNEKIN
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26

OCHEESEE CREAMERY, LLC

v.

ADAM H. PUTNAM, in his official capacity as
Florida Commissioner of Agriculture; and

GARY NEWTON, in his official capacity as
Chief of the Florida Bureau of Dairy Industry

Case No. 4:14CV00621-RH-CAS
UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
(Tallahassee Division)

# EXHIBIT 6

## TABLE OF CONTENTS

**Page**

I.   Introduction and Background............................................................................3

II.  Summary of Conclusions................................................................................7

III. Overview........................................................................................................8

   A. Ocheesee Creamery's Use of the Term "Skim Milk" to Describe its Skim Milk Does Not Mislead Consumers.....................................................................8

   B. Florida's Definition of the Term "Skim Milk," Denial That the Term "All Natural" Applies Appropriately to Ocheesee Creamery's Skim Milk, and Required Addition of Vitamin A to Skim Milk Marketed in the State Serve to Mislead Consumers.......................................................................................11

   C. The Local Food Movement, Which is Built on Trust and of Which Ocheesee Creamery is a Key Cog, is an Important and Growing Part of Florida's Economy.........................................................................................................14

IV.  Signature......................................................................................................19

V.   Exhibit A.......................................................................................................20

## I. INTRODUCTION AND BACKGROUND

My name is Baylen J. Linnekin. I am an attorney and a member of the Maryland state bar and the respective bars of the U.S. Court of Appeals for the Federal Circuit and U.S. Supreme Court. I am a recognized expert on food-law issues generally, and food-labeling and -consumer issues specifically.

I am the founder and executive director of Keep Food Legal Foundation, a Washington, DC-based nonprofit that promotes food freedom of choice—the right of every American to grow, raise, produce, buy, sell, share, cook, eat, and drink the foods of their own choosing. I also serve as an adjunct professor of law at George Mason University Law School, where I teach a Food Law & Policy Seminar. In the course, I teach law students about a wide variety of food-labeling and -consumer policies, laws, and regulations. I also serve as an adjunct faculty member at American University, where—among other courses—I recently taught two class sections on domestic food policy, which focused in part on food labeling. In addition to these duties, since 2011 I have written a weekly column on a variety of food law and policy issues—including food-labeling and -consumer issues—for *Reason* magazine's website.

I frequently offer expert commentary on food-labeling and -consumer issues. For example, this month I was quoted by the *Los Angeles Times* and several other newspapers in an article on a pending FDA food-labeling proposal; appeared on a nationally syndicated public-radio program to discuss the FDA proposal; and served as a panelist at a *Seattle University Law Review* symposium on food labeling. I have previously given talks and lectures that have focused in whole or in part on food-labeling and -consumer issues at Yale Law School, Harvard Law School, University of Chicago Law School,

Duke Law School, Tulane Law School, Pepperdine Law School, and many other law schools and universities. I also served as a guest lecturer in a food law class at Harvard Law School, where my talk included discussion of food-labeling and -consumer issues.

My scholarly research and writing often focuses on food-labeling and -consumer issues. My most recent such article, *Food Law & Policy: The Fertile Field's Origins & First Decade*, appears in a 2014 issue of the *Wisconsin Law Review*.[1] My writing on food and law has also appeared in an academic textbook, the *Routledge International Handbook of Food Studies*, and in the *Oxford Encyclopedia of Food and Drink in America*. My writing on food-law topics has been cited in the *Cornell Law Review*, *Southern California Law Review*, *Minnesota Law Review*, *University of Illinois Law Review*, *Yale Journal of Health Policy Law & Ethics*, *Seton Hall Law Review*, *Oklahoma Law Review*, *Maine Law Review*, *Journal of Law & Education*, *Food & Drug Law Journal*, *Journal of Food Law & Policy*, *Vermont Journal of Environmental Law*, and other legal journals.

In addition to my scholarly writings, I have authored amicus curiae briefs in two food-law cases. Earlier this month, I wrote and submitted an amicus brief to the U.S. Supreme Court in *Horne v. U.S.D.A.* in support of the plaintiffs, who are California raisin handlers. Last year I wrote and submitted an amicus brief to the U.S. Court of Appeals for the Federal Circuit in the case of *DiMare Fresh, Inc. v. United States* in support of the plaintiffs, who are Florida tomato growers and handlers.

I am also deeply enmeshed in efforts to expand the knowledge base of those who practice and teach in the area of food law. For example, I am currently writing a book for

---

[1] *See* Baylen J. Linnekin & Emily M. Broad Leib, *Food Law & Policy: The Fertile Field's Origins and First Decade*, 2014 WIS. L. REV. 557 (2014), *available at* wisconsinlawreview.org/wp-content/files/2-Linnekin-Broad-Leib-Final-Online.pdf.

Island Press that focuses on the ways that government policies often thwart sustainable food practices. Food-labeling and -consumer issues are, together, a key focus of my book. I am also one of six founding board members of the new Academy of Food Law & Policy, a group made up of law-school faculty who teach food law topics. The other founding board members are faculty at Harvard Law School, UCLA Law School, University of Arkansas Law School, and Drake Law School. The group is intended to build a collegial forum in which law-school faculty may discuss key issues in the field.

I have a longstanding professional interest in issues like those presented in the instant case. For example, in 2012, on behalf of the nonprofit I lead, I commissioned Harvard Law School's Food Law and Policy Clinic to write a report on farmers market regulations in ten U.S. states.[2] That report, the first of its kind, focused on regulation of local foods and direct food sales. I also gave a lecture in December 2014 to a visiting Chinese government delegation that focused in part on food labeling in the United States. Additionally, in a previous position as an attorney, my practice focused exclusively on food and beverage labeling.

I have developed expertise pertaining to the reasonable food consumer through years of experience researching, writing about, speaking to, and interacting with the tremendous variety of American food producers and consumers. My work has focused on consumers of local food; foie gras; soda; raw milk; foraged food; fast food; craft beer; food truck fare; and virtually every food and beverage in between.

I earned a J.D. from Washington College of Law, where I served on the editorial board of the *Administrative Law Review*, and an LL.M. degree in agricultural and food

---

[2] *See* Nathan Rosenberg & Emily Broad Leib, *Pennsylvania's Chapter 57 and Its Effects on Farmers Markets*, Harvard Food L. & Pol'y Clinic (2012).

5

law from the University of Arkansas School of Law. In the course of earning the LL.M. degree, I engaged in the broad and deep study of food-labeling issues, particularly as they impact consumer choice.

Exhibit A contains my curriculum vitae. This includes a list of my selected testimony before government bodies; comments written and submitted to government agencies; and speaking engagements. It includes a complete list of my scholarly and print publications over the past ten years. Because it would be cumbersome to include my estimated 150 weekly online *Reason* columns, estimated dozens of blog posts written for *Reason*, and several other online articles, columns, and blog posts, I have not added those to my CV. I would be happy to provide such information upon request.

Counsel for Ocheesee Creamery, LLC ("Ocheesee Creamery") requested that I provide expert analysis in this lawsuit on matters pertaining to food-labeling and -consumer behavior. In particular, I was asked to discuss whether or not, in my opinion, consumers would tend to be misled by the labels at issue in this case. I have not provided expert witness testimony prior to the instant case. I am being paid $100 per hour in connection with my preparation of this report and in preparation for any deposition and/or trial. I would be paid $200 per hour in connection with time spent testifying at a deposition and/or trial, unless such deposition and/or trial is held outside of the Washington, DC metro area, in which case I would be paid $2,000 per day for each day I spend away from home testifying or preparing to testify. I based these rates, which are lower than I might normally charge, on the fact that the Institute for Justice is a nonprofit organization.

## II. SUMMARY OF CONCLUSIONS

Based on my analysis, I have reached the following conclusions.

1. The food that Ocheesee Creamery labeled as "pasteurized skim milk" is pasteurized skim milk.

2. Ocheesee Creamery consumers specifically, and reasonable consumers generally, are not misled by Ocheesee Creamery's use of the term "pasteurized skim milk" to describe its pasteurized skim milk.

3. Ocheesee Creamery consumers specifically, and reasonable consumers generally, would be misled by the state of Florida's term for natural skim milk, "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed." Additionally, Florida's denial that the term "all natural" applies to Ocheesee Creamery's skim milk and Florida's requirement of the addition of Vitamin A to skim milk would mislead reasonable consumers.

4. Ocheesee Creamery is an important part of the growing local food movement, which is meeting growing consumer demand and contributing to the growth of Florida's economy. Requiring Ocheesee Creamery to use the term "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" to describe its skim milk would harm consumer demand for products in this growing segment of Florida's economy.

### III. OVERVIEW

I have reviewed the relevant materials pertaining to Ocheesee Creamery and its use of the term "pasteurized skim milk." I considered a multitude of relevant factors in making my final determinations. These factors include my knowledge of and experience with food-labeling and -consumer issues; my review of court documents from the instant case; consistent historical definitions of "skim milk;" government documents pertaining to the addition of Vitamin A to skim milk; materials pertaining to food waste; and scholarly legal and economics articles pertaining to local and direct-to-consumer food sales. This array of source materials is consistent with the often-multidisciplinary research that is a hallmark of the scholarly field of Food Law & Policy.[3]

### A. Ocheesee Creamery's Use of the Term "Skim Milk" to Describe its Skim Milk Does Not Mislead Consumers

I determined that a reasonable consumer would not be misled in any way by Ocheesee Creamery's use of the term "pasteurized skim milk." History, the sworn statements of Ocheesee Creamery's customers, and the beliefs and expectations of reasonable consumers support this determination.

The utility of skim milk to small farmers and creameries like Ocheesee Creamery is longstanding. The dictionary definition of "skim milk"[4] has remained largely unchanged for centuries.[5] In the Eighteenth Century, Adam Smith noted the usefulness to a small famer of "skimmed milk."[6] As early as the Nineteenth Century, many American

---

[3] *See* Linnekin & Broad Leib, *supra* note 1 at 584 (describing research in the field as "often necessarily multidisciplinary and interdisciplinary").

[4] Skim milk is also known as "skimmed milk" or "skim-milk." This affidavit uses the term "skim milk" unless quoting external sources that use either of the latter terms.

[5] *Compare* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1104 (1989) (defining skim milk as "milk from which the cream has been taken"), *with* DANIEL BELLAMY, A NEW COMPLETE ENGLIFH DICTIONARY, SKU-SLE (1764) (4th ed.) (defining "skim-milk" as "milk from which the cream has been taken").

[6] ADAM SMITH, 1 AN INQUIRY INTO THE NATURE AND CAUSES OF THE WEALTH OF NATIONS 283 (1776).

state laws required that skim milk for sale, just like that Ocheesee Creamery wishes to sell, be labeled affirmatively as "skimmed milk," or else the law considered the milk to be adulterated.[7] The uniform definition of "skim milk" across centuries comports to the skim milk Ocheesee Creamery would sell if permitted to do so by Florida agricultural regulations.

Ocheesee Creamery's use of the term "pasteurized skim milk" is an honest and accurate description of the creamery's pasteurized skim milk and did not serve to mislead its customers in any way. Customers who bought skim milk from Ocheesee Creamery were not misled by the use of the term "skim milk" to refer to the creamery's skim milk.[8]

Reasonable consumers are not misled when a food label accurately reflects the food that is inside a package or container. The best way to convey accurate information to consumers is for food makers to use a descriptive label term for their food that meets the common dictionary definition of that food. Labeling a box of Florida crackers as "crackers" or tea as "tea" is the best way to provide reasonable consumers in the state with truthful and useful information that is not misleading. Reasonable consumers expect such information, and use this expectation, accordingly, to make decisions in the marketplace. In the case of Ocheesee Creamery, the creamery used the term "skim milk" to describe a food that reasonable consumers know to be skim milk. They know this because reasonable consumers are familiar with the definition of skim milk, namely that it is "milk with the cream removed."[9] Consequently, reasonable consumers would not be

---

[7] DAVID SHEPHARD GARLAND ET AL., 1 THE AMERICAN & ENGLISH ENCYCLOPEDIA OF LAW 742 (1896) (citing various statutes in New York, Pennsylvania, and Massachusetts that make "it ... an offense to sell skimmed milk unless it as sold as such, and from a can or vessel marked 'skimmed milk'").
[8] *See generally* Howerton Aff.; Schaefer Aff.; Parker Aff.; Livingston Aff.; Summerville Aff.; Watling Aff.
[9] *See id.*

misled in any way by Ocheesee Creamery's use of the term "pasteurized skim milk" to describe the pasteurized skim milk the creamery has sold.

Customers who bought skim milk from Ocheesee Creamery did so in part because the creamery's skim milk contained no additives.[10] Customers who bought skim milk from Ocheesee Creamery knew that the skim milk they purchased there contained no added Vitamin A and contained less Vitamin A than whole milk.[11] These statements of Ocheesee Creamery's customers demonstrate that the creamery's use of the term "pasteurized skim milk" is an honest and accurate description of its pasteurized skim milk.

While research on consumer perceptions of nutrient fortification, such as the addition of Vitamin A to skim milk, is incomplete,[12] reasonable consumers understand the purposes of fortification.[13] If reasonable consumers purchased skim milk solely because they knew it contained added Vitamin A, then there would be no logical need, as Florida requires, to include reference to the addition of Vitamin A to skim milk. Yet the state still requires both the addition of Vitamin A *and* the notation of that addition to any food labeled as skim milk. Florida has also rejected accurate alternative skim milk labels proposed by Ocheesee Creamery. They include 1) "Pasteurized Skim Milk, No Vitamin A Added;" 2) "Pasteurized Skim Milk, No Lost Vitamin A Replaced;" and 3) "Pasteurized Skim Milk, Most Vitamin A Removed by Skimming Cream from Milk." If Florida values honest and accurate labeling because of the state's perception of what

---

[10] *See id.*

[11] *See id.*

[12] *See* Johanna T Dwyer et al., *Fortification: New Findings & Implications*, NUTR. REV. 127 (2014) ("The FDA has expressed interest in studying consumers' understanding of fortification further[.]")

[13] *See, e.g.,* Mary Jo Feeney, *Nutrient Fortification: Panacea or Pandora's Box?*, 2 HEALTH CONN. (Winter 2006) *available at* https://www.healthyeating.org/Portals/0/Documents/Health%20Wellness/Health%20Connections%20News letters/Fortification.pdf ("[F]ortification adds to a consumer's perception of a food's healthful benefits.")

consumers know about the Vitamin A content of skim milk, then any one of Ocheesee Creamery's proposed (and rejected) alternative skim milk labels would provide a reasonable consumer with honest and accurate information about such content.

**B. Florida's Definition of the Term "Skim Milk," Denial That the Term "All Natural" Applies Appropriately to Ocheesee Creamery's Skim Milk, and Required Addition of Vitamin A to Skim Milk Marketed in the State Serve to Mislead Consumers**

I determined that a reasonable consumer would be misled if the label on Ocheesee Creamery's pasteurized skim milk were to refer to the skim milk contained in the bottle as "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed." Consumers who purchase milk from small creameries like Ocheesee do so because they intend to purchase food that contains no additives and to support creameries that do not use additives in their food. The label "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" makes Ocheesee's all-natural skim milk sound like something other than all-natural skim milk. Such a label would be misleading because it would falsely imply that Ocheesee Creamery sells a "milk product" that contains artificial ingredients, when in fact it sells all-natural skim milk. The alternate definition of skim milk promoted by the state of Florida—"Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed"— would further mislead because it does not comport to the current and historical definitions of "skim milk."[14]

The state of Florida argues that Ocheesee Creamery's use of the term "pasteurized skim milk" to refer to the creamery's pasteurized skim milk "is inherently misleading[.]"[15] The state argues that it "has substantial interests in preventing confusion

---

[14] *See* note 5, *supra*, and accompanying text.
[15] *See* J. Status Rept. & Disc. Plan at 4.

or deception" pertaining to milk sales in the state.[16] That Florida has a substantial interest in preventing deception is undoubtedly true. But the state's requirements for labeling skim milk do not further the state's interests, particularly in the case of Ocheesee Creamery and its customers.

Specifically, the requirement that Ocheesee Creamery refer to its skim milk as "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" is likely to breed confusion among reasonable consumers. Customers who bought skim milk from Ocheesee Creamery believe that the term "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" refers to "something that has been artificially processed in an unnatural or synthetic manner."[17] These Ocheesee Creamery customers state that they "would never purchase" such a product or any other item from the creamery due solely to the fact they view a label that would force Ocheesee Creamery to refer to its skim milk not as skim milk but under the misleading label, namely "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed," would erode their trust both in that food item and in other food items sold by Ocheesee Creamery.[18]

Reasonable consumers who may wish to purchase skim milk from Ocheesee Creamery in the future would also be misled by a label for skim milk that refers to the milk as "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed." The term would serve to mislead reasonable consumers about what is in the milk bottle. Florida's proposed use of the term "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" on labels of Ocheesee Creamery's pasteurized skim milk *is misleading* for the same reason that Ocheesee Creamery's use of the term "pasteurized skim milk" on labels

---

[16] *See id.*
[17] *See* Howerton Aff.; Schaefer Aff.; Parker Aff.; Livingston Aff.; Summerville Aff.; Watling Aff.
[18] *See id.*

for its pasteurized skim milk *is not misleading*. Namely, consumers are best served when food makers employ a descriptive term on their food label that mirrors the commonly known definition of that food. Mandating confusing and misleading names for time-tested foods would certainly mislead a reasonable consumer. That is exactly the effect that Florida's proposed label would have on reasonable consumers of Ocheesee Creamery's pasteurized skim milk. Consequently, Florida's use of the term "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" to describe Ocheesee Creamery's pasteurized skim milk would mislead reasonable consumers.

In addition to the contested use of the term "pasteurized skim milk" to refer to Ocheesee Creamery's pasteurized skim milk, the state of Florida "denies" that Ocheesee Creamery's use of the term "all natural" properly characterizes Ocheesee Creamery's skim milk.[19] According to Ocheesee Creamery, since it first opened on December 9, 2009, it has marketed all of its "Pure" Jersey milk as "all natural."[20] The state of Florida's denial, without explanation, that Ocheesee Creamery's skim milk is all natural is also misleading.[21] Reasonable consumers can differ about the meaning of the terms "natural" or "all natural."[22] Ocheesee Creamery, though, does not add any manmade or artificial substances to its skim milk, and its skim milk does not contain any manmade or artificial substances. It is my opinion that a reasonable consumer would not be misled by claims Ocheesee Creamery's milk is natural or all natural. It is my opinion that a reasonable

---

[19] *See* Def.'s Answer & Affirm. Defenses at 2, 4.
[20] *See* Video, *Grand Opening—Ocheesee Creamery*, TODAY I KNOW, Dec. 2009, http://vimeo.com/9352918.
[21] *See* Def.'s Answer & Aff. Defenses at 2, 4. Florida's denial that Ocheesee Creamery's skim milk is "all natural" may arise from one of the creamery's proposed alternative labels, which includes use of the term "all natural." *See* Pl.'s Compl. for Decl. & Inj. Rel. at 9. This in no way explains *why* Florida denies that use of the term by Ocheesee Creamery would be proper.
[22] *See, e g.*, Nicole E. Negoweti, *Defining* Natural *Foods: The Search for a* Natural *Law*, 26 REGENT U. L. REV. 329 (2014).

13

consumer would be misled by statements that Ocheesee Creamery's milk is not natural or all natural.

Finally, it is my opinion, based on a review of the literature on fortification of skim milk with Vitamin A, that such fortification can have the effect of misleading a reasonable consumer of skim milk. This is the case for two reasons. First, Vitamin A is fat soluble.[23] The benefits of ingesting Vitamin A in milk that contains little or no fat is questionable.[24] Second Vitamin A degrades quickly when—as it is in most milk containers—it is exposed to light.[25] Consequently, requiring that skim milk be fortified with Vitamin A may mislead consumers, including children and the elderly, about how much of a contribution skim milk can have to the overall amount of Vitamin A in their diets.

## C. The Local Food Movement, Which is Built on Trust and of Which Ocheesee Creamery is a Key Cog, is an Important and Growing Part of Florida's Economy

Consumers who purchase milk from Ocheesee Creamery and other small creameries do so knowingly, because they believe local milk to be superior in several ways.[26] Consumers knowingly choose to buy local food because they believe that doing so confers a host of benefits to their local community.[27] These benefits include that such local sales 1) create a direct connection between consumers and agricultural producers; 2)

---

[23] *See* Dep't Health & Human Servs., Pub. Health Serv./Food & Drug Admin., Grade "A" Pasteurized Milk Ordinance 348 (2011 Rev.).

[24] *See, e.g.*, Steven C. Murphy & Chris Newcomer, *Guideline for Vitamin A & D Fortification of Fluid Milk*, Dairy Practices Council (July 2001) ("Whole milk is a good source of vitamin A, though because it is a fat-soluble vitamin, its value is reduced in lower fat milks.")

[25] *See* Dep't Health & Human Servs., Pub. Health Serv./Food & Drug Admin. at 352. ("Vitamin A... fortified skim milk products are subject to decreases in vitamin A, because the vitamin is no longer protected by fat as it is in whole milk. In fluid skim or low fat milk, added vitamin A... is destroyed rapidly when the milk is exposed to sunlight in transparent glass bottles or translucent plastic containers.")

[26] *See* Steve Martinez et al., *Local Food Systems: Concepts, Impacts, and Issues* 3-4, U.S. Dept. of Agric., Econ. Res. Serv. 1, 30 (May 2010) (noting that people "who consider locally produced milk... of better quality, were more likely to express an interest in buying local dairy" (internal citation omitted)).

[27] *See, e.g.*, Vern Grubinger, *Ten Reasons to Buy Local Food*, University of Vermont Extension, http://www.uvm.edu/vtvegandberry/factsheets/buylocal.html (last visited Dec. 21, 2014).

provide the consumer with higher quality food; 3) reduce environmental impacts and energy consumption; and 4) offer social and political support for local farmers.[28] These factors largely mirror those that exist for consumers who buy food directly from a farmer, agricultural producer, or creamery like Ocheesee Creamery. Research shows such consumers knowingly are willing to pay a premium for locally produced food because they believe doing so 1) minimizes food miles and reduces energy dependence; 2) increases environmental benefits; 3) improves the quality and safety of food consumers may buy; and 4) supporting local agriculture and the local economy.[29] Placed within this broader context, Ocheesee Creamery can be seen as an important part of a growing national movement that supports and promotes the purchase of foods grown and raised locally—often directly from those who raise and make such food.

Supporters of buying foods raised and made in one's own community have come to be known as the "local food movement."[30] While there is no single definition of the term "local food," it generally refers to some combination of geographic proximity, sustainable production, small size, a producer's identity and ethics, and the setting in which the food is grown or raised.[31] Consumers view the geographic scope of local foods as hyper-local, or smaller in size than statewide.[32]

---

[28] *See* Marne Coit, *Jumping on the Next Bandwagon: An Overview of the Policy & Legal Aspects of the Local Food Movement*, 4 J. FOOD LAW & POL'Y 45, 48-55 (2008).

[29] *See* Dawn Thilmany, Craig A. Bond, & Jennifer K. Bond, *Going Local: Exploring Consumer Behavior & Motivations for Direct Food Purchases*, 90 AMER. J. AGR. ECON. 1303, 1306 (2008).

[30] *See, e.g.*, Conference Presentation, Debra Tropp, *Why Local Food Matters: The Rising Importance of Locally-Grown Food in the U.S. Food System*, U.S. Dept. of Agric., Nat'l Assoc. of Counties Leg. Conf. (Mar. 2, 2014).

[31] *See* Martinez et al., *supra* note 26; Coit, *supra* note 28; Thilmany et al., *supra* note 29.

[32] *See* Martinez, *supra* note 26 (noting "consumers generally define 'local' in terms smaller than their State").

Local food sales are a small but growing portion of overall agricultural sales in the United States.[33] Local creameries and dairy farms are an important part of local food sales. In fact, dairy farms and creameries like Ocheesee Creamery represent the backbone of the local food movement.[34] According to U.S. Department of Agriculture data, direct-to-consumer marketing of agricultural foods to consumers nearly doubled in the Southeast, a region that includes Florida, between 1997 and 2007.[35] This growth occurred even as growth in total agricultural sales in the same region slowed.[36]

Regulatory pressure is one key reason that small creameries like Ocheesee Creamery find it difficult to contend with larger competitors. As a result, consolidation in the dairy industry is rampant. The number of dairy producers in the United States fell by nearly fifty-percent from 1997 to 2012.[37] This is true even as the number of dairy cows raised in the United States rose during the same period.[38] This consolidation in the dairy industry has meant both fewer creameries and dairy farms and larger dairy farms. As a result, consumers who wish to frequent smaller, local creameries like Ocheesee Creamery are faced with fewer choices.

Against this backdrop of regulatory pressure and competition from large milk producers, small, local dairy farms and creameries must publicize and market the items they sell. Unlike foods produced or sold by large corporations—which are marketed on

---

[33] *See* Renée Johnson et al., *The Role of Local Food Systems in U.S. Farm Policy* 1, Cong. Research Serv. (Jan. 20, 2012) (noting that local food sales make up less than two-percent of overall agricultural sales).
[34] Martinez, *supra* note 26 ("[D]airy and other perishables are the most important focus in promoting local food.").
[35] *See* Adam Diamond & Ricardo Soto, *Facts on Direct-to-Consumer Food Marketing* 2, U.S. Dept. of Agric., Agric. Mark. Serv. (May 2009).
[36] *See id.* at 3.
[37] *See* U.S. Dept. of Agric., 1 *2012 Census of Agriculture: Summary & State Data* 7 (May 2014) (reporting the number of farms in the United States that raise dairy cows fell from 125,041 in 1997 to 64,098 in 2012).
[38] *See id.*

16

television and through other media channels—local foods are most often marketed directly to consumers. Food labels are one key place where such marketing takes place.

Food labels that are "embedded with information" help establish a "connection between the [local] food consumer and producer by providing clearer signals related to the origin of the food[.]"[39] For direct-food marketers, food labels can be the most important and visible form of food marketing.

While supporters of the local food movement put great stock in the authenticity of local foods,[40] more consumers are also demanding "honest" food labels.[41] The information that food labels convey must be accurate and truthful in order for it to be useful to consumers. Consumers who purchase milk and other foods from direct food marketers must be able to trust the food label.[42]

Ocheesee Creamery markets its local skim milk directly to its consumers through its food labels. In that vein, the Ocheesee Creamery "pasteurized skim milk" label is the best place for consumers to learn factual information about the all-natural pasteurized skim milk sold by the creamery.

In my opinion, Ocheesee Creamery's "pasteurized skim milk" is pasteurized skim milk. Reasonable consumers have not been and would not be not misled by Ocheesee Creamery's use of the term "pasteurized skim milk" to describe its pasteurized skim milk.

---

[39] *See, e.g.*, Martinez, *supra* note 26.

[40] *See* Ruffin Prevost, *Yellowstone and Grand Teton Food Producers Reap Benefits from Sustainability*, YELLOWSTONE GATE, Apr. 23, 2012, www.yellowstonegate.com/2012/04/yellowstone-grand-teton-food-producers-reap-benefits-from-sustainability/ ("A growing list of farmers and ranchers... are using a mix of old ways and new techniques to supply sustainably produced food to travelers who crave authenticity[.]"); Greg Bowman, *Free Speech—For You to Use—to Promote Fresh, Local, Organic Food*, Rodale Inst. (Sept. 14, 2006, 1:18 P.M.) rodaleinstitute.org/free-speech-for-you-to-use-to-promote-fresh-local-organic-food/ (last visited Dec. 21, 2014) (stressing the importance of "food that is authentic").

[41] *See, e.g.*, Bruce Horovitz, *Honesty: New Ingredient in Food Labels*, USA TODAY, June 12, 2014, http://www.usatoday.com/story/money/business/2014/06/12/food-labels-pom-wonderful-coca-cola-supreme-court/10381115/.

[42] *See* Martinez, *supra* note 26 ("[T]rust is viewed by some as an important feature of direct agricultural marketing." (citation omitted)).

17

On the other hand, reasonable consumers would be misled by the use of Florida's term for pasteurized skim milk, "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed." Additionally, Florida's denial that the term "all natural" applies to Ocheesee Creamery's skim milk and Florida's requirement of the addition of Vitamin A to skim milk would further cause Ocheesee Creamery consumers to be misled. Ocheesee Creamery is an important part of the growing local food movement, which is meeting growing consumer demand and contributing to the growth of Florida's economy. Requiring Ocheesee Creamery to use the term "Non-Grade 'A' Milk Product, Natural Milk Vitamins Removed" to describe its skim milk would harm consumer demand among this growing segment of Florida's economy. For these reasons, Florida's consumers and the state's public interest would be best served if the state were to permit Ocheesee Creamery to utilize the honest and accurate term "pasteurized skim milk" to describe its pasteurized skim milk.

## SIGNATURE

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge. Signed this 27th day of March , 2015, in North Bethesda, Maryland.


Baylen J. Linnekin

## Exhibit A

**Curriculum Vitae of Baylen J. Linnekin**

# Baylen J. Linnekin

10809 Hampton Mill Ter. #220 | North Bethesda, MD 20852 | 202.415.8148 | baylen.linnekin@gmail.com

## EDUCATION

**University of Arkansas School of Law**, Fayetteville, AR
Master of Laws (LL.M.), Agricultural & Food Law, May 2010; GPA 3.85
- **Honors:**    Leland Leatherman Fellowship
                 Full-Tuition Scholarship

**American University Washington College of Law**, Washington, DC
Juris Doctor (J.D.), May 2009; GPA 3.47
- **Honors:**    ADMINISTRATIVE LAW REVIEW, Note & Comment Editor (2008-09); Junior Staff (2007-08)
                 Dean's Fellow (2009)
- **Activities:**  BUSINESS LAW BRIEF, Junior Editor (2007-08)

**Northwestern University, School of Education and Social Policy**, Evanston, IL
Master of Arts (M.A.), Learning Sciences, Dec. 2001; GPA 4.0

**American University, College of Arts and Sciences**, Washington, DC
Bachelor of Arts (B.A.), Sociology, Aug. 1997

## RESEARCH & TEACHING INTERESTS

- **Primary:**    Food Law & Policy; Constitutional Law; First Amendment; Legal Research & Writing
- **Secondary:**  Administrative Law; Agricultural Law; Environmental Law; Food & Drug Law; Lawyer Bargaining

## COURSES TAUGHT

**George Mason University School of Law**, Arlington, VA
Adjunct Professor, Aug. 2014-
- Food Law & Policy (Fall 2014)

**American University**, Washington, DC
Adjunct Instructor, Anthropology, Aug. 2012-
- The Drinking Age (Spring 2015)
- Food Policy in the United States (Fall 2014)
- Social Media & Social Change (Fall 2014)
- Activism & Social Media (Spring 2014)
- Foodways 2.0 (Fall 2012)

## OTHER PROFESSIONAL EXPERIENCE

**Independent Consultant & Expert**
Dec. 2014-
- Serving as expert witness in First Amendment food-labeling lawsuit
- Wrote amicus curiae briefs in Supreme Court & Federal Circuit Court Fifth Amendment Takings Clause food cases
- Delivered lecture on history of U.S. food-safety regulation to visiting Chinese government delegation

**Keep Food Legal (Foundation)**, Washington, DC
*Executive Director*, Sept. 2010-
- Founded and lead only national 501(c)(3) nonprofit that advocates in favor of and defends food freedom of choice
- Serve as leading national voice opposing overly burdensome federal, state, and local food laws and regulations
- Speak frequently at law schools, universities, academic and lay conferences, think tanks, CLEs, and symposia
- Appear in print, on television and radio, and before government bodies to offer expert comments and testimony

***Reason***, Washington, DC
*Contributor*, June 2008-Mar. 2012; *Weekly Columnist*, Apr. 2012-
- Write weekly column on food law and policy issues for national magazine's website
- Contribute to blog, website, and print magazine

**Lehrman Beverage Law**, Oakton, VA
*Attorney*, Jan. 2010-Dec. 2010
- Reviewed clients' food and beverage labels and marketing for compliance with FDA, USDA, TTB, and FTC rules
- Devised compliance strategies for makers of caffeinated beers, kombucha teas, wine additives, and similar products

**American University Washington College of Law**, Washington, DC
*Research Assistant to Prof. Norman Stein*, Jan. 2009-May 2009
- Created and tested rich digital-media simulation illustrating key tactics for Lawyer Bargaining students

**American University Washington College of Law General Practice Clinic**, Washington, DC
*Student Attorney*, Jan. 2009-May 2009
- Represented Maryland clients in family-law and insurance cases

**Center for Consumer Freedom**, Washington, DC
*Legal Intern*, May 2008-Sept. 2008
- Authored report on advocacy group's thirty-year history of lawsuits against national restaurant chains

## SELECTED PUBLICATIONS

### BOOKS

BOOK, FOOD (UN)CHAINED (Island Press; anticipate completion August 2015)

### SCHOLARLY ARTICLES

ARTICLE, *Food Law & Policy: The Fertile Field's Origins & First Decade*, 2014 *Wis. L. Rev.* 358 (2014) (with Emily Broad Leib)

ARTICLE, *Tavern Talk & the Origins of the Assembly Clause: Tracing the First Amendment's Assembly Clause Back to its Roots in Colonial Taverns*, 39 HASTINGS CONST. L.Q. 593 (2012)

SYMPOSIUM ARTICLE, *The New Food Truck Advocacy: Social Media, Mobile Food Vending Associations, Truck Lots, & Litigation in California & Beyond*, 17 NEXUS J. OP. 35 (2012) (with Matthew Geller & Jeffrey Dermer)

SYMPOSIUM ARTICLE, *The Food-Safety Fallacy: More Regulation Doesn't Necessarily Make Food Safer*, 4 NORTHEASTERN U. L.J. 89 (2012)

ARTICLE, *The "California Effect" & the Future of American Food: How California's Growing Crackdown on Food & Agriculture Harms the State & the Nation*, 13 CHAPMAN L. REV. 357 (2010)

BOOK REVIEW, *Jerome Tuccille's Gallo Be Thy Name*, 4 J. WINE ECON. 253 (2009)

ARTICLE, *Multimedia Cases of Practice: On-line Learning Opportunities For School Leaders*, 7 J. CASES IN EDUC. LEADERSHIP 30 (2004) (with Richard Halverson, Louis Gomez, & James Spillane)

### BOOK CHAPTERS & ENTRIES

ENCYCLOPEDIA ENTRY, *Food Bans*, in THE OXFORD ENCYCLOPEDIA OF FOOD AND DRINK IN AMERICA (Andrew F. Smith ed., 2013)

BOOK CHAPTER, *Food and Law*, in ROUTLEDGE INTERNATIONAL HANDBOOK OF FOOD STUDIES (Ken Albala ed., 2012) (with Emily Broad Leib)

ENCYCLOPEDIA ENTRY, *Center for Science in the Public Interest*, in 1 THE A-Z ENCYCLOPEDIA OF FOOD CONTROVERSIES AND THE LAW 65 (Elizabeth Marie Williams & Stephanie J. Carter eds., 2011)

## REPORTS & WHITE PAPERS

FOOD FREEDOM & ECONOMIC LIBERTY, INSTITUTE FOR JUSTICE (June 2014)

EXTREME REFRESHMENT CRACKDOWN, COMPETITIVE ENTERPRISE INSTITUTE (May 2010)

## PRINT ARTICLES & COLUMNS

OPINION, *Tricking the Public to 'Promote' Health*, N.Y. POST, JUNE 28, 2013

OPINION, *End Farm Subsidies and Make Agriculture Sustainable*, BALT. SUN, May 18, 2011

OPINION, *Mopping Up the Raw-Milk Mob*, WASH. TIMES, May 13, 2011

ARTICLE, *The Lobster Underground*, REASON, April 2011

## MULTIMEDIA

SHORT FILM, FOOD LAW & POLICY, June 2014 (with Leena Jayaswal & Emily Broad Leib)

COMPUTER SIMULATION, LAWYER BARGAINING "ASK SYSTEM," May 2009

## WORKS IN PROGRESS

SYMPOSIUM ARTICLE, *The Future of Food Law & Policy: The Responsibility of Lawyers in the Academy and Beyond* (with Susan Schneider; Emily Broad Leib; Margaret Sova McCabe; Laurie Ristino; & Michael Roberts) (working paper), http://ssrn.com/abstract=2342872

BOOK, FOOD FREEDOM (proposal stage)

## SELECTED PRESENTATIONS

INVITED SPEAKER, *Food Freedom*, Federalist Society, University of Idaho Law School, Apr. 2015

INVITED SPEAKER, *Food (Un)Chained*, Food & Drug Law Society/Federalist Society, University of Chicago Law School, Apr. 2015

PANELIST, *New Developments in Food Labeling & the First Amendment*, Seattle University Law Review Symposium, Seattle University Law School, Mar. 2015

INVITED SPEAKER, *Food (Un)Chained*, Kentucky Journal of Equine, Agriculture, & Natural Resources Law Symposium, University of Kentucky Law School, Feb. 2015

PANEL MODERATOR, *Local Foods & Sustainability*, Duke Environmental Law & Policy Forum Symposium, Duke University Law School, Jan. 2015

INVITED SPEAKER, *Food Safety in America*, Guangzhou (China) Food and Drug Administration, Dec. 2014

INVITED SPEAKER, *Raising Food with Faces*, National Animal Interest Alliance Annual Conference, Nov. 2014

INVITED PANEL MODERATOR, *Reducing Legal Barriers, Empowering Consumers, and Creating Pathways for Sustainably and Humanely Raised Meat*, The Meat We Eat Forum, Harvard University School of Law, Apr. 2014

INVITED PANELIST, *The Big Picture Made Small: Perspectives on Local Foods*, New Directions in Environmental Law Conference, Yale University School of Law/School of Forestry and Environmental Studies, Mar. 2014

INVITED SPEAKER, *Food Freedom*, Federalist Society, Pepperdine University School of Law, Jan. 2014

INVITED SPEAKER, *Food Freedom*, Federalist Society, Loyola University (New Orleans) School of Law, Oct. 2013

ROUNDTABLE MODERATOR, *The Future of Food Law & Policy: The Responsibility of Lawyers in the Academy and Beyond*, Yale Food Systems Symposium, Yale University, Oct. 2013

INVITED SPEAKER, *Food Freedom*, Federalist Society, Yale University School of Law, Oct. 2013

INVITED PANELIST, *The Food Police: From Menu Labeling to Soda Bans*, The Heritage Foundation, Sept. 2013

INVITED PANELIST, *Farm to Table and the Law*, Continuing Legal Education (CLE) Seminar, Southern Food & Beverage Museum/Tulane University School of Law, Aug. 2013

INVITED PANELIST, *Farm-to-Table Regulations*, Farm-to-Table International Symposium, Aug. 2013

INVITED SPEAKER, *Food Freedom*, Cornell College, Mt. Vernon, IA, Apr. 2013

INVITED PANEL MODERATOR, *You Are What You Tweet*, Social Learning Summit, American University, Apr. 2013

INVITED PANELIST, *Big Government and Big Food vs. Food Trucks, Foodies, and Farmers Markets*, American Enterprise Institute, Feb. 2013

INVITED PANEL ORGANIZER & MODERATOR, *Improving the Regulatory Climate for Food Trucks*, Continuing Legal Education (CLE) Seminar, Southern Food & Beverage Museum/Tulane University School of Law, Sept. 2012

PANELIST, *Seeds of Discontent*, Ancestral Health Symposium, Harvard University School of Law, Aug. 2012

PANELIST, *The Localization of Food Law*, Association for the Study of Food and Society Annual Conference, New York University, June 2012

INVITED PANELIST, *Improving the Food Truck Regulatory Model*, Chicago Food Vending Symposium, Clinic on Entrepreneurship, University of Chicago School of Law, Apr. 2012

INVITED PANELIST, *Obesity, Marketing, & Rights*, Communicating Childhood Obesity Prevention and Policy, Mar. 2012

PANELIST, *Food, Assembly, & the Struggle for Social Change*, Food & the City Conference, Boston University, Feb. 2012

INVITED CO-KEYNOTE PANELIST, *Food Freedom, Nexus Journal of Law & Policy* "Food Fight!" Symposium, Chapman University School of Law, Nov. 2011

INVITED PANELIST, *Defending Culinary Freedom: Why Keep Food Legal & the Bill of Rights Protect Your Right to Make Your Own Food Choices*, Harvard Food Law Society/Harvard Federalist Society, Harvard University School of Law, Oct. 2011

INVITED CLASS GUEST LECTURER, Food/Health Law & Policy Seminar, Harvard University School of Law, Oct. 2011

INVITED PANEL ORGANIZER & MODERATOR, *Food Law 2.0: Teaching Food & Law Beyond the FDCA*, Continuing Legal Education (CLE) Seminar, Southern Food & Beverage Museum/Tulane University School of Law, Sept. 2011

INVITED SPEAKER, *From Four Loko to Foie Gras*, Federalist Society, Tulane University School of Law, Sept. 2011

INVITED PANEL MODERATOR, *Marketing for Mobile Food*, La Cocina San Francisco Street Food Festival, Aug. 2011

INVITED SPEAKER, *Raw-Milk Rights*, Food & Farm Freedom Rally, Upper Senate Park, U.S. Capitol, May 2011

PANELIST, *Tweets, Streets, & Eats: Social Media & America's Food Truck Revolution*, Conable Conference on Cuisine, Technology, and Development, Rochester Institute of Technology, Mar. 2011

INVITED PRESENTER, *Taxes on Sugary Food & Drink*, Southern Food & Beverage Museum Roundtable Series, Dirksen Senate Office Building, Jan. 2011

INVITED PANELIST, *The Food-Safety Fallacy, Northeastern University Law Journal* Symposium on Food & Agricultural Law, Northeastern University School of Law, Jan. 2011

PANELIST, *The "California Effect" & the Future of American Food*, Association for the Study of Food and Society Annual Conference, Pennsylvania State University, May 2009

PANELIST, *Failures of the Finicky Food-Court Fanatics*, Association for the Study of Law, Culture, & the Humanities Annual Conference, Suffolk University School of Law, Apr. 2009

## SELECTED TESTIMONY & BRIEFS

*Brief of Amici Curiae Baylen J. Linnekin & Keep Food Legal Foundation in Support of Petitioners*, Horne et al. v. United States Dept. of Agric., (U.S., Mar. 6, 2015) (No. 14–275)

*Brief of Amici Curiae Baylen J. Linnekin & Keep Food Legal Foundation in Support of Appellants*, Di Mare Fresh, Inc. v. United States, (Fed. Cir., Jan. 26, 2015) (No. 15–5006)

*Testimony in Support of Food Trucks*, Washington, DC City Council, May 10, 2013

*Testimony Opposing Proposal to Impose State Tax on Sweetened Beverages*, Committee on Health Care, Vermont State Legislature, Feb. 7, 2013

*Testimony Opposing Proposed Soda Ban*, New York City Department of Health and Mental Hygiene, July 24, 2012

## SELECTED PUBLIC COMMENTS

*Comments on Current Good Manufacturing Practice & Hazard Analysis & Risk-Based Preventive Controls for Human Food; Standards for Growing, Harvesting, Packing, & Holding of Produce for Human Consumption*, Food & Drug Administration, Dec. 15, 2014

*Comments Opposing the FDA's Tentative Determination Regarding Partially Hydrogenated Oils* (Trans Fats), Food & Drug Administration, Mar. 7, 2014

*Comments Opposing Proposed FDA Food Safety Modernization Act Rules for Produce Safety & Preventive Controls for Human Food*, Food and Drug Administration, Nov. 19, 2013

*Comments Opposing Proposed Interagency Working Group Guidelines for Marketing Food to Children*, Federal Trade Commission, July 14, 2011

## BAR MEMBERSHIPS

U.S. Supreme Court (admitted 03/15)

U.S. Court of Appeals for the Federal Circuit (admitted 12/14)

Maryland State Bar (admitted 12/09)

## OTHER MEMBERSHIPS & AFFILIATIONS

Founding Board Member, Academy of Food Law & Policy

Peer Reviewer, *Gastronomica*